**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Michael G. Pierritz, Jr. (R-66202), Plaintiff, v. Tarry Williams, et al., Defendants. | ) ) ) ) ) ) ) ) ) | Case No. 24 C 50137<br>Hon. Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Some may wonder why a federal court is required to write a 17-page opinion as to why the failure to acquiesce to a prisoner's demand for a firmer mattress does not rise to a Constitutional violation, but here we are. Prisoners are entitled to Constitutional treatment. On this, we should all agree. But they are not entitled to a mattress of their choosing. Hopefully, we agree on this, too.

Illinois prisoner Michael G. Pierritz, Jr. initiated this *pro se* civil rights action under 42 U.S.C. § 1983 concerning his request for a new mattress at the Dixon Correctional Center. Pierritz has been diagnosed with arthritis and degenerative disc disease for which he has received a back brace. He also takes medications for the pain. Seeking greater relief, Pierritz asked prison medical providers and officials for a new mattress because, in his opinion, a new mattress would ease the pain he feels when he wakes up in the morning. When he did not receive a new mattress, he sued Nurse Practitioner Chelsea Sword because she allegedly denied his requests for a "medical mattress," and he sued Wardens Tarry Williams and Andrea Tack because they did not respond to his requests for a new mattress. Dkt. 7, Am. Comp. at pp.5-6. Defendants deny any unconstitutional conduct and move for summary judgment in their favor. For the reasons discussed below, the Court grants Defendants' motions for summary judgment.

**Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The procedures set out in Local Rule 56.1 "serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019) (citation omitted). The Court considers only facts presented in compliance with Local Rule 56.1. *Matthews v. Donahoe*, 493 F. App'x 796, 799-800 (7th Cir. 2012) (allowing district court to strictly enforce its local rules) (collecting cases).

Local Rule 56.1 requires the moving party to submit a motion, supporting memorandum of law, and statement of material facts accompanied by cited evidentiary material. N.D. Ill. L.R. 56.1(a), (d). The opposing party then must respond to the moving party's motion and statement of facts. N.D. Ill. L.R. 56.1(b), (e).

The opposing party's response "must consist of numbered paragraphs corresponding to the numbered paragraphs in the [movant's] statement[.]" N.D. Ill. L.R. 56.1(e)(1). "Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." N.D. Ill. L.R. 56.1(e)(2). The opposing party also "must cite specific evidentiary material that controverts the fact[.]" N.D. Ill. L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party wants the Court to consider facts not set forth in the movant's statement of facts or properly presented in response to the movant's facts, the opposing party must submit a separate "statement of additional material facts." N.D. Ill. L.R. 56.1(b)(3). A litigant's *pro se* status does not excuse him from compliance with

Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001).

Defendants served Pierritz with a "Notice to Unrepresented Litigants Opposing Summary Judgment" as required by Local Rule 56.2. *See* Dkt. 65, 77. The Notice explained the procedures for opposing summary judgment. Pierritz separately responded to Defendant Sword's facts (Dkt. 83, 84), but his responses are largely argumentative.[1] Pierritz did not respond to the Wardens' statement of facts. The Court therefore considers the Wardens' facts admitted. *See* L.R.56.1(e)(3).

**Background**

When Illinois prisoner Michael G. Pierritz, Jr. arrived at the Dixon Correctional Center in 2017, he was issued a mattress by correctional staff that he considered "old already." Dkt. 62, Def. Sword L.R.56.1 Stmt. of Facts (SSOF) ¶ 5. He described the mattress as 2.5 to 3 inches thick, with holes and missing insulation in the top cover, and with a foul odor. SSOF ¶ 5. He cleaned the mattress with detergent, which improved the odor. SSOF ¶ 5.

On May 17, 2017, a registered nurse saw Pierritz for complaints of back pain in his middle to lower back, which he rated a 5 on a 1-10 pain scale. SSOF ¶ 6. Pierritz explained to the nurse that he had a history of back pain from injuries he sustained during his childhood. SSOF ¶ 6. The nurse noted no swelling, redness, bruises, or tenderness. SSOF ¶ 6. She also noted that Pierritz had an active range of motion and steady gait. SSOF ¶ 6. Pierritz had an existing prescription for Motrin, to which the nurse added a prescription for 325 mg of acetaminophen up to three times a day as need. SSOF ¶ 6.

---

[1]Pierritz's responses to Swords's facts also are not signed by him or attested. The Court nevertheless has considered Pierritz's responses to the extent that he could testify to the information in the responses.

Pierritz next complained to medical staff about back pain approximately one year later. From May to June 2018, Pierritz was seen by three different nurses for complaints of lower back pain that he rated a 5-6 on a scale of 1-10. SSOF ¶¶ 7-9. He reported occasional numbness and difficulty ambulating when waking but that it "goes away" after a while. SSOF ¶ 7 (citing Ex. B to SSOF at IDOC Medical 000631-32). Pierritz also reported pain with side-to-side movement. *See* IDOC Medical 000632. He attributed the pain to his bed and reported that Tylenol did not alleviate the pain. SSOF ¶ 8. He expressly asked Nurse Practitioner Tuell, who is not a defendant to this lawsuit, for a "firmer mattress" on June 1, 2018. SSOF ¶ 9. Pierritz explained during his deposition that he wanted a firm mattress because "stiffness helps [his] back." SSOF ¶ 10. Tuell's notes reflect: "Adv. pt we don't do mattress req." SSOF ¶ 9 (citing Ex. B, IDOC Medical 000635).

Pierritz did not make any further complaints about his mattress until 2023, when he filed a grievance on July 17, 2023. *See* SSOF ¶ 20; Dkt. 74, Defs. William & Tack L.R. 56.1 Stmt. of Facts (WSOF) ¶ 10. Pierritz explained in the grievance: "I have been made to sleep on a worn out, filthy, mattress that smells moldy causing me severe pain to adversely effects my sleep to the point that it causes insomnia, and sleep deprivation." *See* WSOF ¶ 10 (citing Dkt. 74-3, Ex. C to WSOF at IDOC 000029-32). Pierritz continued: "The pain is at times so severe that I must fall to my knees when getting out of bed, and have to pull myself up from the floor." Ex. C, at IDOC 000029-32. "NP Sword advised me that I have arthritis in my spine, and I requested her for a mattress, and she replied that she doesn't have anything to do with mattresses." Ex. C at IDOC 000029-32. Pierritz reported that he had written to Wardens Williams, Tack and Wilks. Ex. C at IDOC 000029-32. He requested a "new" mattress. Ex. C at IDOC 000029-32. He did not request a "medical" mattress. *See* Ex. C at IDOC 000029-32; *see also* WSOF ¶ 14.

Warden Williams's signature appears on the grievance, which was deemed a non-emergency. Ex. C at IDOC 000029-32. Williams attested, however, that he did not personally review the grievance. WSOF ¶ 11. The task of reviewing the grievance was delegated to a subordinate. WSOF ¶ 11.

In the time between when Pierritz asked Nurse Tuell for a "firmer mattress" in June 2018 and his July17, 2023 grievance asking for a "new mattress," Pierritz was seen by several different medical providers and received several different treatments for his back pain. Beginning in March 2022, Pierritz was assessed by a physical therapist, who recommended a "postural support regime" and physical therapy once a week. SSOF ¶ 12. Pierritz subsequently reported that the postural support did not help, and the physical therapist noted little improvement over several sessions. SSOF ¶ 14. The physical therapist also noted that Pierritz's complaints of stiffness were consistent with his exercise routine. SSOF ¶ 14. Physical therapy was discontinued. SSOF ¶ 14.

Defendant Nurse Practitioner Sword saw Pierritz for the first time on August 31, 2022, with respect to his complaints of back pain and occasional arm numbness. SSOF ¶ 17. Sword is a nurse practitioner licensed by the State of Illinois. SSOF ¶ 3. Her job duties at the time involved providing medical care and treatment to inmates at Dixon. SSOF ¶ 3. Sword is familiar with arthritis and degenerative disc disease, which are common in adults. SSOF ¶¶ 48, 49. There is no cure for either condition. SSOF ¶¶ 48, 49. Treatment of both conditions focuses on symptom management, such as nonsteroidal anti-inflammatory medications (*e.g.*, acetaminophen, aspirin, and ibuprofen); life-style changes, exercise, and physical therapy; and topical applications (*e.g.*, heat and cold, corticosteroids, or analgesic rubs). SSOF ¶¶ 48, 49. Treatment for degenerative disc disease also includes steroid injections and traction. SSOF ¶ 49.

When Defendant Sword saw Pierritz on August 31, 2022, Pierritz complained of back pain and told Sword that he worked out twice a day. SSOF ¶ 17. He denied an acute injury, weakness, or radiating pain. SSOF ¶ 17. Sword ordered an x-ray and continued an existing prescription for Mobic. SSOF ¶ 17. Sword's notes reflect that she discussed with Pierritz "stretching," "activity as tolerated" and "avoid[ing] activities that exacerbate pain[,]" SSOF ¶ 17, though Pierritz contends that he "was never told or shown how to stretch and what activities not to do." Dkt. 83 & 84, Pl. Resp. to Def.'s SOF ¶ 17.

On September 12, 2022, Pierritz was seen by a nurse practitioner who is not a defendant to this lawsuit to discuss the results of the x-ray ordered by Sword. SSOF ¶ 18. The x-ray showed mild to moderate degenerative changes and osteopenia. SSOF ¶ 18. During the appointment, Pierritz told the nurse that he remained "very active" and "work[ed] out all the time." SSOF ¶ 19. Pierritz also reported that his pain was tolerable with Motrin and Tylenol and denied any numbness or tingling at the time. SSOF ¶ 19. The nurse's notes reflect that she discussed with Pierritz "stretching and exercise as tolerated" and "avoid[ing] activities that worsen pain." SSOF ¶ 19. Pierritz contends, however, that he was "never told about [] healthy activities while avoiding overexertion." Pl. Resp. to Def.'s SOF ¶ 19.

Four months later—in January 2023—Pierritz received a disciplinary ticket when a correctional officer saw him using a homemade jump rope to exercise. SSOF ¶ 21. Pierritz explained during his deposition that, at the time, he exercised by jumping rope "once a week[.]" SSOF ¶ 21. Jumping rope did not cause pain while he was doing it, but he would have "discomfort" almost immediately afterwards. SSOF ¶ 21 (citing Dkt. 62-1, Ex. A to SSOF, Pierritz Dep. 44:12-45:13). He would "just push[] through the pain." SSOF ¶ 21.

Pierritz was seen by Dixon nurses no fewer than five times between April 2023 and the end of October 2023 for complaints of intermittent pain in his back, shoulder, knee, and neck. SSOF ¶¶ 22-26. Pierritz told a non-defendant nurse in April 2023 that his most significant issue was pain in his shoulder and knee. SSOF ¶ 23. Notes from the April 2023 visit reflect that he had prescriptions for existing pain medications but reported that he took them "rarely." SSOF ¶ 23. In August 2023, Pierritz's complaints of pain were similarly focused on issues unrelated to his back pain. *See* SSOF ¶ 24.

In October 2023, Defendant Sword saw Pierritz for complaints of neck and back pain. SSOF ¶ 26. A registered nurse initially examined Pierritz at sick call and observed slow, stiff movement. SSOF ¶ 25. When Sword saw Pierritz two days later, he complained only of neck and shoulder pain. SSOF ¶ 26. He also advised that his existing medications (Naproxen and Mobic) did not help. SSOF ¶ 26. Sword prescribed Voltaren as an alternative. SSOF ¶ 26.

One month later, Pierritz received a disciplinary ticket for stepping up and down on a stack of legal boxes. SSOF ¶ 27. Pierritz explained during his deposition that he performed "box jumps" as a form of exercise and would "push through" the pain. SSOF ¶ 27 (citing Ex. A, Pierritz Dep. 42:21-44:11).

On December 12, 2023, Defendant Sword saw Pierritz for complaints of neck pain that radiated into his upper back, at which time he asked for renewal of his prescriptions for Excedrin and Meclizine. SSOF ¶ 29. He had been prescribed the medications for unrelated orthopedic pain. SSOF ¶ 29. Sword performed a physical examination that revealed Pierritz's neck was not tender to palpation, he had no obvious neck deformity, he had "positive spurling signs to his bilateral upper extremities which were strong and equal," and his range of motion was intact. SSOF ¶ 30.

Sword observed no acute distress. SSOF ¶ 30. She assessed Pierritz with cervical radiculopathy, ordered x-rays of his c-spine and t-spine, prescribed Prednisone, kept his existing prescription for Voltaren in place, and discussed stretching and activity with him. SSOF ¶ 30. When Sword saw Pierritz six days later, he reported that Prednisone initially helped, but he was not back to a baseline pain level. SSOF ¶ 31. Sword added a prescription for an analgesic muscle rub and referred Peirritz to physical therapy. SSOF ¶ 31. X-rays subsequently showed mild degenerative changes, with no acute changes. SSOF ¶ 32. Sword assessed Pierritz with degenerative disc disease and made no changes to the care plan. SSOF ¶ 32.

Pierritz then initiated this lawsuit. In a complaint dated February 28, 2024, he complained about his "used" and "worn out" mattress. Dkt. 1, Comp. The complaint was dismissed because it did not state a claim on which relief could be granted. Dkt. 6, Apr. 30, 2024 Order. Pierritz clarified in an amended complaint that, although his mattress was old and moldy, his claim was based on the fact that he had "ask[ed] NP Sword for a medical mattress or to help me get a new mattress because of the pain I wake up in," and she denied the request because it is a "security problem." Dkt. 7, Am. Comp., p.5. When Pierritz wrote to the Wardens, he did not receive a response. *Id.* Based on the alleged facts, the Court allowed an Eighth Amendment medical claim to proceed past screening against Nurse Sword and Wardens Williams and Tack. Dkt. 8, July 16, 2024 Order.

Pierritz also continued to complain to Dixon medical providers about his back pain. On April 11, 2024, he saw a nurse practitioner for complaints of back and knee pain. SSOF ¶ 33. The nurse discussed medication options with Pierritz, but he declined medications that staff needed to watch him take. SSOF ¶ 33. The nurse also prescribed a back brace, ordered x-rays of Pierritz's l-spine, referred him to a neurosurgical or pain clinic, and referred him to physical therapy. SSOF ¶

33. Pierritz received a back brace within a week and began physical therapy within a month. SSOF ¶¶ 34, 35. Notes from a May 9, 2024 physical therapy session reflect that Pierritz reported a 50% improvement in his symptoms. SSOF ¶ 35.

On May 21, 2024, Defendant Sword saw Pierritz at his cell to follow up on his complaints of back, shoulder and knee pain. SSOF ¶ 36. She observed that he had an upright and steady gait and appeared to be in no acute distress. SSOF ¶ 36. Her notes reflect that Pierittz conveyed to her, "I have back pain, shoulder pain, and knee pains and you aren't doing anything for me" but admitted that Voltaren "helps." SSOF ¶ 36 (citing Ex. B, IDOC Medical 254). Sword continued the prescriptions for Volatren and the muscle rub. SSOF ¶ 36. One month later, notes from a physical therapy session reflect that Pierritz reported wearing his back brace while working along with a "60-70% improvement" in his pain. SSOF ¶ 37. The physical therapist discussed proper stretching and discontinued physical therapy. SSOF ¶ 37.

In October 2024, Pierritz was approved for evaluation of his back pain at the University of Illinois-Chicago Hospital. SSOF ¶¶ 42, 43. He agreed to continue with the course of care recommended by the Dixon medical professionals until he could be assessed at UIC's pain clinic. SSOF ¶ 44.

In April 2025, Pierritz received a new mattress from correctional staff because, Pierritz says, his old mattress was damaged when a ceiling caved in. SSOF ¶ 45. He testified during his deposition that the new mattress helped his back pain. SSOF ¶ 45. Even so, Pierritz testified that he still wanted a "Drive" mattress. SSOF ¶ 46. He explained that, when he refers to a "medical" mattress, he means a "Drive" mattress, which is thicker and firmer than the standard mattresses provided to prisoners. SSOF ¶ 10. Pierritz's medical records do not reflect that he ever requested

a Drive mattress from Defendant Sword or from any other medical personnel at Dixon. *See* SSOF ¶ 51; WSOF ¶ 19. In Defendant Sword's opinion, Pierritz did not present to her, at any time, in a way that objectively suggested a "medical" mattress, such as a Drive mattress, was medically necessary. SSOF ¶ 51.

Defendants' motions for summary judgment are before the Court. Dkt. 60, 73.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The opposing party "may not rest upon mere allegations in the pleadings[.]" *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (quoting *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001)). Instead, the opposing party must make "a sufficient showing on every element of his case on which he bears the burden of proof[.]" *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019). "The burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." *Pyles v. Fahim*, 771 F.3d 403, 408-09 (7th Cir. 2014).

The Court considers relevant, properly supported evidence in the light most favorable to the opposing party. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021). The Court also

draws "reasonable inferences from the evidence" in the opposing party's favor, but not speculative inferences. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

**Discussion**

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). To prevail on a claim that his medical care violated the Eighth Amendment, a prisoner must be able to prove that: (1) he suffered from an objectively serious medical condition and (2) the defendant knew about and was deliberately indifferent to the condition. *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (quoting citations and quotations marks omitted).

## I. Serious Medical Condition

Defendants argue that Pierritz's complaints of back pain do not constitute a serious medical need. Dkt. 61, p.4; *see* Dkt. 75, p.10. A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotation marks and citation omitted). The Seventh Circuit considers chronic back pain serious enough to support an Eighth Amendment deliberate indifference claim, even if the prisoner's pain is treatable with an over-the-counter pain reliever. *Diaz v. Godinez*, 693 F. App'x 440, 443-44 (7th Cir. 2017).

Sword nevertheless argues that Pierritz's back pain is not objectively serious because he is able to exercise and perform activities of daily living. Dkt. 61, p.5. Sword also argues that the pain can be attributed to Pierritz's exercise program. *Id.*, pp.5-6. But any conclusion to be drawn from these facts—*e.g.*, whether Pierritz suffered from a serious medical condition even though he was

able to "push through" the pain—is best left to a jury. *Diaz*, 693 F. App'x at 443-44 ("Pain is a uniquely subjective experience, and it is not appropriate to conclude at summary judgment that nontrivial pain alleged by an inmate is not deserving of treatment."). The Court therefore considers, for present purposes, that Pierritz might be able to establish that his medical condition was sufficiently serious to satisfy the first prong of the analysis.

## II. Deliberate Indifference

The deliberate indifference inquiry looks to the defendant's "state of mind[.]" *Farmer*, 511 U.S. at 838 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). To be held liable for an Eighth Amendment violation, a plaintiff "must provide evidence" that the defendant "actually knew of and disregarded a substantial risk of harm." *Lockett*, 937 F.3d at 1023 (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Deliberate indifference requires a "subjective state of mind akin to criminal recklessness" and must be assessed in light of the "totality of care." *Owens v Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019); *see also Boykins v. Wilson*, No. 23-3027, 2025 WL 48413 at *2 (7th Cir. Jan. 8, 2025) (citing *Davis v. Kayira*, 938 F.3d 910, 915 (7th Cir. 2019)). Negligence or even gross negligence is not enough to establish deliberate indifference. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021).

### A. Nurse Sword

Nurse Sword argues that she is entitled to summary judgment because she exercised clinical judgment in deciding how to treat Pierritz's complaints of pain. Dkt. 61, pp.8-12. "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under [the] circumstances." *Pyles*, 771 F.3d at 409 (citation

and quotation marks omitted). Where evidence shows that a medical provider's "decision was based on medical judgment, a jury may not find deliberate indifference" absent evidence "that the defendant[] knew better than to make the medical decisions that they did[.]" *Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 635 (7th Cir. 2024) (citation and quotation marks omitted). A prisoner's mere disagreement with a medical professional's treatment decision is not enough to establish deliberate indifference. *Boykins v. Wilson*, No. 23-3027, 2025 WL 48413, at *3 (7th Cir. Jan. 8, 2025) (citing *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021)).

In assessing Nurse Sword's liability, it is important to keep in mind the scope of the claim against her. This case stems from Pierritz's allegation that he "ask[ed] NP Sword for a medical mattress or to help me get a new mattress because of the pain I wake up with," and she denied the request because it is a "security problem." Dkt. 7, Am. Comp., p.5. It is easy to lose focus given that Pierritz seems to complain about the entirety of his care in his summary judgment submissions.

As to the mattress, Sword argues that the record contains no evidence that Pierritz requested a mattress from her. Dkt. 61, p.8. Pierritz did not respond to Nurse Sword's argument. *See* Dkt. 82 & 84, Pl. Resp. He responded only to Sword's statement of fact, in which he asserted that he "told NP Sword about my lack of sleep because of my mattress and my pain[.]" Dkt. 83 & 84, Pl. Resp. ¶ 51. Pierritz could testify to this fact, and a complaint of the type described by Pierritz arguably could have alerted Sword to the fact that Pierritz was seeking a new or different mattress as a means to alleviate his pain. But that is not the end of the matter.

Sword attested in support of her motion for summary judgment: "at no time did I find that [Pierritz] objectively presented in such a way that a 'medical mattress,' such as a Drive mattress, was medically necessary." SSOF ¶ 51 (citing Ex. B to SSOF, Sword Decl. at ¶ 46). Sword

explained in her motion that Pierritz mentioned his exercise regime and denied any acute injury on the occasions that she saw him. Dkt. 61, pp.9-10. When he advised that his medications did not help alleviate his pain, Sword changed the medications. *Id.* She also ordered x-rays, Prednisone, and a muscle rub when he continued to complain about pain. *Id.*

The record supports a conclusion that Sword exercised her medical judgment in deciding how to treat Pierritz's complaints of back pain. The fact that Sword did not prescribe a medical mattress in response to Pierritz's complaints of pain is not evidence of deliberate indifference. *See Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 681 (7th Cir. 2023) (explaining that Eighth Amendment does not entitle prisoners to their preferred treatment); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (explaining that prisoner "is not entitled to demand specific care"; he is entitled only to "reasonable measures to meet a substantial risk of serious harm"). To defeat summary judgment, Pierritz was required to identify evidence that Sword "knew better than to make the medical decisions that [she] did." *Clemons*, 106 F.4th at 635. He did not do so. Sword therefore is entitled to summary judgment.

**B. Wardens Williams and Tack**

Wardens Williams and Tack argue that they are entitled to summary judgment for three reasons: (1) they were not personally involved in a constitutional violation; (2) they did not intentionally disregard a substantial risk to Pierritz's health or safety; and (3) they are entitled to qualified immunity. Dkt. 75. Pierritz did not respond to the arguments. *See* Dkt. 82-84.

A defendant cannot be held liable under section 1983 "unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2 864, 869 (7th Cir. 1983) (citations omitted). "Without a showing of direct responsibility for [] improper action, liability will

not lie against a supervisory official." *Id.* An "affirmative link" between the purported misconduct "and the official sued is necessary." *Id.*

The record before the Court shows that Pierritz made the following requests to prison administrators to replace his mattress. First, in a grievance dated July 17, 2023, he requested a "new mattress" because his then-mattress was "worn out," "filthy," smelled "moldy," caused him pain, and effected his ability to sleep. Dkt. 74-3, p.3. He conveyed that he had asked Nurse Sword for "a mattress," but she said "she doesn't have anything to do with mattresses." Second, Pierritz "wrote to" Wardens Williams and Tack to request a "medical" mattress. Dkt. 62-1, pp.55-57; *see* Dkt. 74-3, p.3. Pierritz was unable to identify the date or content of the writings and conceded during the deposition that he was never prescribed a medical mattress. Dkt. 62-1, pp.55-57.

Pierritz's written requests for a mattress are insufficient to defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat summary judgment).

Warden Willams attested in support of his motion for summary judgment that he did not personally review the July 17, 2023 grievance even though his signature appears on the grievance. That task was delegated to a subordinate. Pierritz submitted no evidence calling into question Williams's attestation. That said, even if Williams had read the grievance, the information conveyed in the grievance would not have alerted Williams to the fact that Pierritz had been denied a medically necessary mattress. *See Kourani v. Sproul*, No. 25-1821, 2026 WL 2445436, *2 (7th Cir. Aug. 20, 2026) ("complaints that convey only a generalized or vague concern about one's condition will not support an inference that a prison official had actual knowledge that a prisoner faced a serious medical risk").

Pierritz's vague assertion that he "wrote to" the Wardens to request a "medical" mattress fares no better. Absent evidence that the Wardens knew Pierritz's medical care was unconstitutionally deficient, the Wardens were allowed to rely on medical staff to treat Pierritz's back pain. *See id.*; *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("[T]he law encourages non-medical . . . personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoner in their care without fear of liability for doing so."). This means that the Wardens were not required to provide Pierritz with a "new" or "medical" mattress just because Pierritz mentioned in a grievance or some other writing that he suffered from back pain and believed a different mattress would help alleviate his pain.

Put another way, Pierritz identified no evidence from which a jury could infer that the Wardens participated in a constitutional violation or that the Wardens knew about and disregarded a serious risk to Pierritz's health or safety. The Wardens therefore are entitled to summary judgment on the merits.

The Wardens also are entitled to qualified immunity. Qualified immunity protects public officials and employees "from liability for actions taken in the course of their official duties if their conduct did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a public official or employee is entitled to qualified immunity, the court employs "a two-prong test: (1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." (citations omitted). "Unless both questions are answered in the

affirmative, the defendant is protected by qualified immunity." *Villalobos v. Picicco*, 168 F.4th 1057, 1062 (7th Cir. 2026).

The Wardens' argument for qualified immunity rests solely on the first prong of the analysis and is little more than a recitation of the black letter law governing qualified immunity followed by a summation of their arguments on the merits of Pierritz's claims. Dkt. 75, pp.8-9. Because Pierritz identified insufficient evidence from which a jury could conclude that the Wardens violated his constitutional rights, the Wardens are entitled to qualified immunity.[2]

## CONCLUSION

The Court grants Defendants' motions for summary judgment. Dkt. 60, 73. Final judgment will be entered in favor of Defendants Sword, Williams and Tack, and against Plaintiff Pierritz. This case is closed.

Date: September 22, 2026 By: ______________________

Iain D. Johnston
United States District Judge

[2]The Wardens did not develop an argument on the second prong of the analysis, so the Court has not considered the second prong.